# SHEEDY *v.* DISTRICT OF COLUMBIA.

### GIFT ENTERPRISE.

A grocer who, as agent for a cereal company, sells packages of oats, each package containing a coupon upon which is printed one of the letters contained in the word "Mothers," and an agreement on the part of the company to give a premium to any purchaser who shall send to the company coupons containing all of the letters of the word, is properly convicted of engaging in the business of a gift enterprise contrary to sections 1176–7, R. S. D. C. (*following* Lansburgh v. District of Columbia, 11 App. D. C. 526), although another plan for distribution of premiums to purchasers is provided for in such coupons, which, if pursued alone, might not support a conviction.

No. 1187.  Submitted December 8, 1901.  Decided January 7, 1902.

IN ERROR to the Police Court of the District of Columbia. *Judgment affirmed.*

The COURT in its opinion stated the case as follows:

The plaintiff in error, Patrick H. Sheedy, was convicted in the police court of the offense of engaging in a gift enterprise in the District of Columbia, and has sued out a writ of error in accordance with the terms of the law.

The case was submitted below upon the following agreed statement of facts:

The defendant, Patrick H. Sheedy, is engaged in the grocery business at the corner of Florida Ave. and 7th St. N. W., in the District of Columbia, in the manner in which such business is usually carried on in said District, and as part of his said mercantile business he sells to his customers the rolled oats of The Akron Cereal Co., under the plan and scheme of said company, as hereinafter set forth.

The Akron Cereal Co. is a corporation organized under the laws of the State of Ohio, with its principal office and manufactory at Akron, in said State. It is engaged in the manufacture and sale of flour, corn meal, and other cereal products, having a capacity of 1,500 barrels per day, and has no other business. Among the cereal products manufactured and sold by said company is rolled oats, a preparation of oats for table use, which is sold in two-pound packages. In each of these packages is placed a card or slip of paper or coupon, on which is printed on one side:

" Save these cards
Until the red letters on coupons spell the word
M O T H E R S.
'A letter will be found in each two-pound package.
Special premium plan.

Those who do not desire to wait for letters to spell MOTHERS can send us coupons (any letter) found in Mother's Oats, and obtain their choice of the following premiums:

Tea-strainer . . . . . . . . . . . . . . 25 coupons & 4c. postage.
Rabbit's foot paper-cutter. . . . . 30 coupons & 4c. "
Tape measure . . . . . . . . . . . . . . 30 " & 4c. "
Concise Atlas of the World. . . 40 " & 4c. "

NOTE.— We do not accept coupons which are distributed as advertisements for these premiums. Only those found in the packages."

And on the other side:

" On receipt of the letters spelling the word MOTHERS, from any one person, we will present free of charge at our station (Akron), packed ready for shipment, either an
Elegant decorated tea set of 56 pieces
or a
Handsome decorated toilet set of 10 pieces.

Your choice of two exquisite patterns, green or rose. These are high-class goods, and would retail at $8 each.

This is one way of advertising direct to the consumer, and will be continued only till MOTHER's OATS are thoroughly

introduced.   Every package has a letter, and quality is guaranteed A No. 1.   All grocers sell them.

THE AKRON CEREAL Co., *Akron, O., U. S. A.*"

A copy of one of the coupons is attached hereto and marked " Exhibit A." On each card so inserted in said two-pound packages of rolled oats is printed in red ink a representation of the seal of the said company and a large impression of one of the letters which spell the word " Mothers." Packages of oats containing cards similar to the one attached hereto and marked " Exhibit A," have been sold by the defendant and were sold by him in the usual course of his business as a groceryman on or about the day charged in the affidavit on which the warrant was issued for his arrest in this case.

These packages of oats so put on the market by said The Akron Cereal Co. are sold to the consumer for the same price at which other manufacturers sell similar packages containing similar quantities of cereal food, and at the fair market value of such goods, and the goods so sold by said company are equal to the best. The cards or coupons so above described are used for the purpose of advertising the goods. Each of said cards or coupons has a value. The company's experience has demonstrated that eighty per cent. of all the coupons so placed on the market and sold with packages of Mother's oats are offered for redemption, and all coupons so offered are redeemed by the company.

Since the introduction of this method of selling Mother's oats 152 sets of said dishes so as aforesaid offered by said The Akron Cereal Co. have in said manner been distributed in the District of Columbia.

The expense to the said company of the dishes and premiums so given away bears a fixed ratio to the cost of manufacture and practically does not vary. Said company uses this method of advertising its rolled oats and at a fixed cost practically per case of goods so manufactured and sold by them.

Many manufacturers of similar and different lines of goods offer premiums to the public, whose value varies ac-

cording to the number of coupons or cards or tags presented by the purchaser, one such coupon, card, or tag having a value. Soap, tobacco, coffee, and cereal products are very commonly advertised and sold in this manner.

Said company has given away a very large number of the premiums offered for the smaller sets of coupons.

One purchaser may, if he be extremely fortunate, secure the letters forming the word "mothers" by the purchase of seven packages, but another purchaser may have to purchase many times that number before he will acquire all of the letters and thus become entitled to the premiums. Since the introduction of this method of selling Mother's oats 152 sets of said dishes, so as aforesaid offered by the said Akron Cereal Co., have in said manner been distributed in the District of Columbia, while about a thousand packages have been sold therein.

*Mr. Frederick C. Bryan* for the plaintiff in error:

1. The case presents the state of facts which this court in *Lansburgh* v. *District of Columbia*, 11 App. D. C. 528, declared it would not pass upon until such time as a case might be presented demanding it.

It is true that the court intimated in that case that if the element of chance entered into the distribution of premiums or awards it would bring that scheme under the prohibition of said statute. No such state of facts, however, was presented in the Lansburgh case and the court was not called upon to pass upon that point. Any expression of the court on such point was purely *obiter dictum.*

2. The constitutionality of this statute was not passed upon in the Lansburgh case for the question was not raised. The scheme therein complained of was clearly a " gift enterprise " and was clearly a scheme which Congress, under the exercise of the police power, had authority to prohibit.

The scheme for the distribution of premiums in this case is two-fold in character, and admitting that one feature of it involves the element of chance and that Congress has author-

ity to prohibit it, the terms of the statute just as plainly permit the other feature of the method in which all customers are treated alike and no element of chance inheres.

This is a criminal statute and must be construed strictly against the Government and in favor of the accused. It is not a statute directed against lotteries but against gift enterprises.

3. The criminal statute on which this action is based, was passed to destroy that kind of business styled "gift enterprises," which were formerly licensed under a high annual tax. The giving away of premiums in the manner alleged does not come within the description of a gift enterprise as contemplated by the statute and cannot be held to be in violation of the law.

There is no statute in the District of Columbia prohibiting lotteries; the only statute in force is the general law excluding them from the mails. The absence of such statute is a presumption that Congress did not deem it necessary to legislate on the subject.

The Supreme Court of Maryland, in the case of *Long* v. *The State,* 74 Md. 565, drew the distinction sharply between lotteries and gift enterprises; and said of the scheme there in question that "it undoubtedly violates the provisions of our Code prohibiting lotteries ' and all devices and contrivances designed to evade ' this provision." See also 14 Am. & Eng. Encyc. 1005.

4. A regulation of trade which declares that no person shall give away anything to a purchaser of goods or merchandise as an inducement to make the purchase, is not only unwise but unlawful, because unnecessary for the health, safety and welfare of the people. *Long* v. *State, supra; People* v. *Gilson,* 109 N. Y. 389; *Commonwealth* v. *Emerson,* 165 Mass. 146.

5. This act is a municipal ordinance, and the limit of such legislation is clearly established by a long line of authorities. It must be reasonable, impartial, nonoppressive, and may regulate but not restrain trade. *Mayor, etc.* v. *Radecke,* 49 Md. 217, and authorities cited.

There are many cases in which courts have protected the individual from an unwarrantable interference with his property under the pretense of the exercise of " police power." While generally it is for the legislature to determine what laws are required to protect the public health, public peace and safety under the guise of police regulations it may not arbitrarily infringe upon personal or property rights; and its determination as to what is a proper exercise of the power is not final or conclusive but is subject to the scrutiny of the courts. *Matter of Application of Jacobs,* 98 N. Y. 98; *Lakeview* v. *Rose Hill Cemetery,* 70 Ill. 191; *Austin* v. *Murray,* 16 Pick. 121. A safe line to be followed in the exercise of this " police power " is laid down by the Supreme Court in *Minneapolis & St. Paul Ry. Co.* v. *Beckwith,* 129 U. S. 126.

It is so well known as to be a matter of judicial cognizance that newspapers give away lithographs, that theaters distribute souvenirs, that gas and electric light companies give rebates for prompt payment of bills, that street car companies sell six tickets for a quarter, that grocers and other merchants give coupons which entitle one to a premium, valued according to the number of coupons presented.

The privilege of pursuing an ordinary calling or trade, and of acquiring, holding and selling property, embraces the right to make all contracts proper, necessary and essential in relation thereto. *Allgeyer* v. *Louisiana,* 165 U. S. 578. Legislation cannot abridge constitutional privileges. *Counselman* v. *Hitchcock,* 142 U. S. 547. Constitutional provisions for the security of person and property should be liberally construed. *Boyd* v. *United States,* 116 U. S. 616. To be valid, legislation enacted for the purpose of promoting the public health, morals or welfare, must be of such a character that it will affect and be of benefit to the whole community, or at least that part of it which is brought in contact with the evil sought to be remedied. *Holden* v. *Hardy,* 169 U. S. 366. It is respectfully submitted that neither statute nor public policy prohibits such a course of business carried on by merchants " in the ordinary course and practice of competitive business;" and particularly where it appears

that the premium or gift is not the real object of the sale and that there is no " attempt to evade acts regulating or prohibiting a particular traffic." *Louer* v. *District of Columbia,* 11 App. D. C. 453. The giving away of premiums with breakfast food by a grocer as part of his regular legitimate trade, is not one of the " evils " against which Congress has attempted to legislate.

6. Such statute being clearly unconstitutional as applied to the second feature, to wit, the giving of premiums to purchasers in proportion to the number of packages purchased, it must be held unconstitutional as to the first feature, which involves the element of chance, according to the well-known rule of constitutional construction, it being impossible to separate that which is constitutional from that which is not. A statute may be valid as applied to a certain state of facts, but if it is not valid as applied to another state of facts, to which by its terms it is equally applicable, it is invalid *in toto,* unless that which is valid is capable of separation so that each may be read by itself. *Baldwin* v. *Franks,* 120 U. S. 678; *United States* v. *Reese,* 92 U. S. 214; *Trade-Mark Cases,* 82 U. S. 98; *Virginia Coupon Cases,* 114 U. S. 305; *Allen* v. *Louisiana,* 103 U. S. 84.

*Mr. Andrew B. Duvall* and *Mr. E. H. Thomas* for the defendant in error.

Mr. Justice SHEPARD delivered the opinion of the Court:

The business of the gift enterprise is defined in an act of the former District assembly (A. D. 1871) providing an annual license therefor, in the following terms: " Every person who shall sell or offer for sale any real estate or article of merchandise of any description whatever, or any ticket of admission to any exhibition or performance, or other place of amusement, with a promise express or implied, to give or bestow, or in any manner hold out the promise of gift or bestowal, of any article or thing, for and in consideration of the purchase by any person of any other

article or thing, whether the object shall be for individual gain, or for the benefit of any institution of whatever character, or for any purpose whatever, shall be regarded as a gift enterprise." These general words form a part of a section of a comprehensive system for raising revenue through licensing trades and occupations; but the amount of the annual license for this particular business, would seem to indicate rather an intention to prohibit all small ˄nterprises of the kind at least.

In 1873 an act of Congress specially disapproved and repealed the aforesaid section of the act of assembly and declared it unlawful to " engage in said business in any manner as defined in said act or otherwise;" and provided a penalty therefor. (R. S. D. C., Secs. 1176, 1177.)

This prohibitory enactment has heretofore been carefully considered by this court and upheld as applied to a scheme for distributing premiums or gifts to the customers of retail merchants by means of a system of " trading stamps " managed by third parties. *Lansburgh* v. *District of Columbia,* 11 App. D. C. 512.

One of the contentions of the plaintiff in error in that case has been substantially repeated in this, namely; that the act is so broad as to comprehend and punish acts that are matters of common right and clearly beyond the power of the Congress to prohibit, and that the statute is invalidated thereby because such acts are inseparable from those clearly within the prohibitory power. The point was fully considered in that case and denied upon a review of the authorities bearing upon it. We are entirely satisfied with the conclusion then reached, and see no occasion to add anything to the reasons given therefor.

It is quite true, as contended, that the business engaged in by the plaintiff in error, as set out in the agreed statement, differs, in important particulars, from that carried on by the party in the former case, and embraces also two separate plans for the distribution of premiums, prizes or gifts, that are submitted to the selection of purchasing customers.

A coupon with a letter in red is enclosed in each package offered for sale. A purchaser who retains these until he shall have collected enough of them to include the letters necessary to spell the word *Mothers*, may forward them to the manufacturer in Akron, Ohio, who agrees, in such event, to deliver to him, at Akron, a set of china valued at eight dollars. If he prefers, however, he may send the red letters, as obtained, in certain quantities, not less than twenty-five in any case, with four cents in postage stamps and receive in return certain specified articles of slight value. This double plan of distribution of the gifts, though not found in Lansburgh's case, does not operate to take the case out of the rule of construction therein enounced; for to concede that either the principal or the alternative plan might not be within the scope of the act, or within the power of the Congress to prohibit, cannot change, or raise an exception to, the principle of its application.

The information with which the prosecution began has been omitted from the record because of the agreed case, but it appears from the statement in the briefs that the charge was the general one of engaging in the business of a gift enterprise contrary to the statute. The agreed case admits the sale of many packages containing the coupons which, at the option of the purchasers, could be, and had been, used according to both of the plans.

For the reasons sufficiently stated in the opinion in Lansburgh's case (11 App. D. C. p. 526) and in cases there cited, we think it clear that the statute cannot be declared void or inoperative, because the main feature of the scheme includes another which, by itself, might be lawful, or not within the power of the Congress to render unlawful.

As regards this main feature of the business scheme, we are of the opinion that it falls clearly within the scope of the statute prohibiting engagement in the business of a gift enterprise " in the manner defined in the act, or otherwise." (R. S. D. C., Sec. 1176.) To the indirect gift or premium feature of the " trading stamp " scheme, it plainly superadds the element of chance, the gambling feature generally

involved in all of the many forms of what is ordinarily known as a gift enterprise.

Holding, as we do, that this leading feature of the scheme of distribution is clearly within the police power of regulation and prohibition, that it is within the terms of the statute, and that the conviction of engaging in the business of a gift enterprise may stand upon that ground alone, even if it should be held that the second method, if alone pursued, would not support a conviction, it becomes unnecessary to pass upon the contention, that the latter method is a legitimate incident of a lawful business with which it is beyond the constitutional power of Congress to interfere.

In view of the numerous schemes to attract purchasers and secure trade that have been in practice, and the probable inventions of new ones from time to time hereafter, we think it unwise to go any farther beyond the particular method upon which the case turns, in the expression of an opinion in respect of what might or might not be within the power of Congress to declare unlawful, than was done in Lansburgh's case.

In that case, after indicating certain benefits conferred upon customers by retail merchants against which the statute either would or could not be made to operate, it was said: " It is possible also that it might not be operative in a case where the sale of a lawful article is accompanied by a gift of something specific and certain, not attended with any element of chance, and where the gift is not the real object of the sale in an attempt to evade acts regulating or prohibiting a particular traffic, as, for example, in the case of *Lauer* v. *District of Columbia,* 11 *App. D. C.* 453.

It is sufficient to say that the case at bar does not furnish an instance of a gift, specific and certain, by a retail dealer to each customer who purchases a specific article.

The plaintiff in error gives nothing to the purchaser and, so far as the premium scheme is concerned, acts as the representative or agent, merely, of a third person who gives nothing specific and certain to induce the purchase, but undertakes to make a gift to any one who shall send him

19

not less than twenty-five coupons at a time and four cents in postage stamps. The following language used in Lansburgh's case is, therefore, applicable to that of the plaintiff in error.

" Although a regular merchant of the city of Washington, he does not appear on this record as convicted of the offense of offering a discount, a premium or a gift to his own customers upon sales made to them in the course of his business, and he cannot make that defense." 11 App. D. C., p. 532.

" We think it will be time enough to determine, when the exact question shall have been presented, whether the statute prohibiting the business of a gift enterprise applies to, or can be enforced against a regular merchant who, at the time of sale, gives to his customer some additional article as an inducement that has been offered to obtain the purchase.

For the reasons given, the judgment of the police court will be affirmed with costs; and it is so ordered. *Affirmed.*